USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-23-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CAMERON INDUSTRIES, INC.,          :
                                   :     08 Civ. 9561(VM)
                    Plaintiff,     :
                                   :     **DECISION AND ORDER**
       - against -                 :
                                   :
CARAVAN, LTD.,                     :
                                   :
                    Defendant.     :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Cameron Industries, Inc., ("Cameron") brought this action against defendant Caravan, Ltd. ("Caravan"), alleging copyright infringement under Title 17 of the United States Code. Cameron asserts that Caravan copied Cameron's Pattern No. 23385 ("Pattern 23385"), a stem-and-leaf design that Cameron had previously printed onto fabric and sold as sample yardage. The Court conducted a bench trial on November 16-17, 2009 to adjudicate Cameron's claim.

The Court now sets forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The Court concludes that Cameron failed to show that Caravan infringed Cameron's copyright of Pattern 23385 because, as explained below, the Court finds that Cameron did not meet its burden of proving by a preponderance of the evidence that Caravan copied Pattern 23385.

## I. **FINDINGS OF FACT**[1]

Both Cameron and Caravan are textile converters. Textile converters purchase fabrics without prints and then place designs on them. Textile converters then sell the printed fabric to, among others, garment manufacturers. Garment manufacturers, in turn, produce and sell the finished garments made from printed fabrics to retail stores.

Cameron is the owner of the copyright to Pattern 23385, as represented by Certificate of Copyright Registration No. VA 1-640-726. (See Pl. Trial Ex. 2.) In July of 2005, Cameron purchased the artwork and assignment of design for Pattern 23385 from an Italian art studio. Cameron asserts that its vice president of design and merchandising, Constanza Waldman ("Waldman"), then altered the artwork somewhat by creating a design featuring what Waldman described as a half drop repeat. In April of 2006, Cameron first began selling fabric with Pattern 23385.

In June of 2006, Cameron sold sample yardage of fabric with Pattern 23385 to a garment manufacturer named Castle Hill Apparel, Inc. ("Castle Hill"). After sampling the fabric,

---

[1] While the Court has reviewed and considered all of the live testimony and accompanying exhibits admitted in evidence in connection with the trial in this matter, the Court addresses only those portions of the evidence relevant to its legal conclusions.

Castle Hill opted not to purchase bulk yardage of that fabric from Cameron. Cameron did not introduce any evidence that showed a desire on the part of Castle Hill to purchase bulk yardage of the fabric. Further, Cameron did not introduce any evidence of Castle Hill either entering into any price negotiations with Cameron or expressing any concern about Cameron's pricing of its fabric. In fact, Cameron's president and owner, Soheil Khayyam ("Khayyam") testified that Cameron and Castle Hill never discussed price in relationship to purchasing Pattern 23385. (See Trial Tr. at 97; see also id. at 66 (citing the testimony of Waldman).)

In May and June of 2007, about a year after Castle Hill had purchased the sample quantities of Pattern 23385 fabric described above from Cameron, Castle Hill purchased from Caravan sample quantities of a stem-and-leaf design that is very similar to Pattern 23385. Caravan asserts that its internal name for this stem-and-leaf pattern is design D21 ("Design D21").

In September of 2007, Castle Hill purchased 33,000 yards of fabric with Design D21 from Caravan. Castle Hill manufactured ladies' garments from the fabric with Design D21 and sold these garments to the retailer JC Penney Company, Inc. ("JC Penney").

-3-

On February 3, 2008, Waldman spotted a garment in a JC Penney department store that she believed was improperly copied from Pattern 23385. Waldman purchased the garment from that store with the intent to bring it to the attention of her employer, Khayyam. The garment at issue was manufactured by Castle Hill with fabric purchased from Caravan that contained what Caravan claims is Design D21.

On or about February 4, 2008, Khayyam contacted Castle Hill to discuss whether Castle Hill had copied Pattern 23385 and thus infringed Cameron's copyright. Castle Hill denied any copyright infringement and stated that it had purchased the fabric with Design D21 from Caravan.

Soon after, Castle Hill contacted Caravan about the alleged copyright infringement. In this same timeframe, Khayyam also spoke with Ben Katz ("Katz"), part owner of Caravan, regarding Cameron's copyright-infringement concerns. Katz denied that Caravan had infringed Cameron's copyright to Pattern 23385.

On November 6, 2008, Cameron filed the instant action. Cameron asserts that Caravan accessed Pattern 23385 from Castle Hill, copied it, and then sold to Castle Hill 33,000 yards of the fabric with a substantially similar stem-and-leaf design.

-4-

In response, Caravan denies any access to, or copying of, Pattern 23385.

At trial, Caravan grounded its main defense on a theory of prior, independent creation. Specifically, Caravan asserted that (1) it had purchased fabric with Design D21 in September of 2004 (and soon after sold samples and bulk quantities of it), almost a year prior to Cameron's having obtained Pattern 23385; and (2) the stem-and-leaf design found in Pattern 23385 has been generally available in the marketplace for many years. Caravan further argued, and the Court agrees, that Cameron did not sufficiently establish that Caravan ever had access to Pattern 23385. As such, Caravan asserted that it could not have copied Pattern 23385 in its Design D21, and that Caravan therefore did not infringe Cameron's copyright of Pattern 23385.

Cameron responded by claiming subsequent, dependent creation. Specifically, Cameron asserted that (1) Caravan fabricated its evidence of prior purchase and prior sale; (2) the stem-and-leaf design found in Pattern 23385 is unique; and (3) Caravan had to have copied it via its access to Pattern 23385 through Castle Hill in order for Caravan to have produced its substantially similar stem-and-leaf design. Thus, Cameron argued that Caravan copied Pattern 23385 when producing its

Design D21 stem-and-leaf fabric, and that Caravan therefore infringed Cameron's copyright of Pattern 23385.

To evidence its claim of prior, independent creation, Caravan presented the Court with several business records from 2004 and 2005 relating to both its purchase of Design D21 and its sale of fabric with Design D21. Caravan's business records relating to its purchase of the design that it later labeled Design D21 include: (1) a Caravan purchase order, dated September 17, 2004, showing that Caravan purchased fabric printed with Design D21 and labeled with that designation from GES Tekstil (the "Caravan Design D21 Purchase Order") (Def. Trial Ex. A); (2) a GES Tekstil invoice, dated November 11, 2004 (the "GES Tekstil Invoice") (Def. Trial Ex. D); (3) a letter of guarantee from a company called Milorea SARL to GES Tekstil, dated October 4, 2004, regarding Milorea SARL's guarantee of ownership of Design D21 (the "Milorea SARL Guarantee Letter") (Def. Trial Ex. B); and (4) an assignment of artistic work from Milorea SARL to GES Tekstil, dated October 30, 2004, conveying to Caravan all rights in Design D21, including the right to copyright Design D21 (the "Milorea SARL Assignment of Artistic Work") (Def. Trial Ex. C).

Caravan's business records relating to its sale of fabric with Design D21 indicate a continuity of transactions dating to

2004 specifying a pattern with that designation. Those documents include: (1) a facsimile purchase order from Island Apparel, dated November 29, 2004, for fabric printed with Design D21 (the "Island Apparel Purchase Order") (Def. Trial Ex. H) and (2) a Caravan invoice, dated December 8, 2004, detailing an order and shipment for sample quantities of fabric with Design D21 that Caravan sold and shipped to Rhoda Lee, Inc. (the "Rhoda Lee Invoice") (Def. Trial Ex. J). All of the Caravan evidence mentioned above pre-dates July of 2005, the date on which Cameron asserts that it acquired its rights to Pattern 23385. The Court finds Caravan's evidence to be both credible and compelling. Cameron did not persuade the Court that Caravan's evidence was fabricated.

In addition to its evidence of prior purchase and prior sale, Caravan also presented evidence that it lacked access to Pattern 23385. Katz testified that he did not see Pattern 23385 until 2008, when Cameron brought the instant copyright-infringement issue to Caravan's attention. (See Trial Tr. at 294-95.) Katz further testified that Castle Hill never showed Caravan samples of Pattern 23385. Witnesses Gary Rodbell ("Rodbell") and Laura Azar-Kuhn, both employees of Castle Hill, testified that Castle Hill's decision to purchase fabric printed with Design D21 in 2007 (1) was not connected to

Castle Hill's sampling of Pattern 23385 from Cameron almost a year earlier in 2006, and (2) that Castle Hill never showed Caravan the samples of fabric with Pattern 23385 that Castle Hill had purchased from Cameron. (See Trial Tr. at 112, 133.) The Court finds that the testimony of the witnesses from Caravan and Castle Hill is credible. Cameron presented no evidence that refuted the truthfulness or accuracy of this testimony. Rather, Cameron asked the Court to make an inferential leap that because Castle Hill had sampled Pattern 23385 in 2006, its purchase of Design D21 in 2007 from Caravan necessarily must have resulted from Caravan accessing Pattern 23385 from Castle Hill and then copying it. That theory might have some plausibility if the stem-and-leaf motif contained in both Pattern 23385 and Design D21 embodied an exceptionally unique artwork. But evidence presented by witnesses from both sides indicated that the underlying design is quite unremarkable and has been in the textile marketplace for many years. On this evidence, it is equally plausible that Caravan could have independently obtained the design from any one of multiple sources other than Castle Hill.

In sum, Cameron presented no convincing evidence from which the Court could reasonably draw the inference Cameron seeks. That conclusion would be based on speculation that

Caravan had access to Pattern 23385 because Castle Hill had earlier sampled fabric with that design; because Caravan had access to Castle Hill a year later; and because of the similarities between Pattern 23385 and Design D21. (See, e.g., Trial Tr. at 97 (Khayyam testifying) ("Q. Do you have any knowledge of anyone, any knowledge of anyone from Castle Hill having shown your fabric to Caravan? A. The proof of it is the garment of Castle Hill that we found at JC Penney and we found out that Caravan is the supplier of the fabric. I don't need more proof. Q. That's not my question. Do you have any knowledge of any person from Castle Hill having shown the fabric, your fabric, to anyone from Caravan? A. That's the only knowledge I had.").)

Cameron also asserts that another entity could not have created Caravan's stem-and-leaf design without having access to Pattern 23385. Rodbell, though, testified that the stem-and-leaf design at issue was generally available in the marketplace in the relevant timeframe. (Trial Tr. at 109). Even Cameron witness Waldman admitted that "there have been patterns of leaves with sprigs around for hundreds of years." (Trial Tr. at 59-60.) The Court finds this testimony persuasive and finds that another entity could have created Caravan's stem-and-leaf design without access to Pattern 23385.

## II. CONCLUSIONS OF LAW

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109-10 (2d Cir. 2001). The Court concludes that Cameron's claim fails because Cameron has not satisfied the second prong of this standard: Cameron has failed to show to a preponderance of the evidence that Caravan infringed its copyright of Pattern 23385.

To establish "infringement of the copyright by defendant," id. at 109-10, "the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Id. at 110 (internal quotations omitted). Cameron has not shown to a preponderance that Caravan "actually copied [Cameron's] work." Id.

"Under the Copyright Act, one may market a product identical to a copyrighted work so long as the second comer designed his product independently." Id. at 110 (citing Feist Publ's, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 345-46 (1991). In the instant case, Caravan has presented

credible and persuasive evidence indicating that -- even if Design D21 is substantially similar to Pattern 23385 -- Caravan procured Design D21 independently. Caravan presented credible and persuasive evidence of its purchase of fabric with Design D21 before July of 2005, the date on which Cameron acquired rights to Pattern 23385. (See the Caravan Design D21 Purchase Order (Def. Trial Ex. A); the GES Tekstil Invoice (Def. Trial Ex. D); the Milorea SARL Guarantee Letter (Def. Trial Ex. B); the Milorea SARL Assignment of Artistic Work (Def. Trial Ex. C).) Caravan also presented credible and persuasive evidence indicating its sample and bulk sales of fabric with Design D21 pre-July of 2005. (See the Island Apparel Purchase Order (Def. Trial Ex. H); the Rhoda Lee Shipping Invoice (Def. Trial Ex. J).)

Cameron asserts that Caravan fabricated the evidence that shows that it purchased and sold fabric with Design D21 before Cameron purchased Pattern 23385. However, Cameron presented no credible, compelling evidence establishing any lack of credibility, authenticity, or reliability in Caravan's evidence.

As described above, Cameron urges the Court to infer that Caravan copied Pattern 23385 because Caravan had access to it through the sale of fabric of substantially similar Design D21

-11-

to Castle Hill (May through September of 2007), subsequent to Cameron's sale of sample quantities of fabric with Pattern 23385 to Castle Hill (June of 2006).

While it is true that "[b]ecause copiers are rarely caught red-handed, copying has traditionally been proven circumstantially by proof of access and substantial similarity," Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988), it is also true that "[a]ccess must be more than a bare possibility and may not be inferred through speculation or conjecture." Id. Here, Cameron relied too much on speculation and conjecture to prove its case, and thus failed to satisfy its burden by failing to provide non-speculative, non-conjectural evidence of Caravan having had access to Pattern 23385 before Caravan sold its Design D21 fabric to Castle Hill.

Caravan presented credible and persuasive testimony that it did not have access to Pattern 23385 until 2008, when Cameron brought the instant copyright-infringement issue to Caravan's attention. (See, e.g., Trial Tr. at 112, 133.) Accordingly, Cameron did not persuade the Court by a preponderance of evidence that Caravan ever accessed Cameron's Pattern 23385 in the relevant time period. Cf. Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999) (finding access by the

defendants because plaintiff had provided defendants with the design pattern at issue before defendants allegedly infringed plaintiff's copyright).

Two other considerations that the Court weighed heavily, also reviewed above, further militate in favor of the Court's conclusion that Cameron did not meet its burden in establishing copying by Caravan. First, the stem-and-leaf design at issue was commonly and readily available in the market during the relevant time period. In fact, even one of Cameron's witnesses, Waldman, testified that "there have been patterns of leaves with sprigs around for hundreds of years." (Trial Tr. At 59-60.) Thus, any number of entities could have independently created Design D21 without copying Pattern 23385.

Second, almost a year lapsed between Castle Hill's sampling of fabric with Pattern 23385 from Cameron and Castle Hill's sampling of fabric with Design D21 from Caravan, and during this period Castle Hill never attempted to negotiate a price with Cameron for fabric with Pattern 23385. Cameron failed to introduced non-speculative evidence to show that Castle Hill, after having sampled Patter 23385 from Cameron, (1) was unsatisfied with Cameron as a textile converter of this fabric (whether due to price or otherwise), and (2) therefore

went to Caravan almost a year later to obtain a copy of Pattern 23385 at a lower price.

Cameron thus failed to meet its burden of showing at trial that Caravan had access to, and copied, Pattern 23385. Without copying, there can be no copyright infringement. Yurman, 262 F.3d at 110. Accordingly, the Court concludes that Cameron has not established "infringement of the copyright by the defendant." Id. at 109-10.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Clerk of the Court is directed to enter judgment in favor of Defendant Caravan, LTD., dismissing the complaint of plaintiff Cameron Industries, Inc.

**ORDERED** that the Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         22 December 2009

                                        VICTOR MARRERO
                                           U.S.D.J.